Teamsters. Mr. Hayden. Good morning. We are asking this court to consider reversal of the district court's entry of summary judgment. And the determination of two core issues on that decision were the issue of whether there's a single employer and then the appropriateness of the bargaining unit. I do think, though, central to both of those issues and overlapping both of those issues is the effect of some historical facts in the case that are really important to the impact on the overall result of the case. And that is, what is the effect of the union's 2007 decision to disclaim an interest in representing the employees at Cremation Society of Illinois? So remember, in years leading up to 2007, Cremation Society and Sullivan Olson, these two entities, were being treated separately by the union. In 2007, after repeated requests by Cremation Society to negotiate individually with the union, this is a multi-employer agreement through an association, the union finally did it. It came to the table. But during those negotiations, walked away and disclaimed any further interest in representing the Cremation Society employees. And, in fact, it went ahead and did what a union does in those cases. It then assessed withdrawal liability. Cremation Society paid that withdrawal liability, thus terminating the party's bargaining relationship in its entirety at that time. That's critical, I think, when we get to the overarching issue of single employer and appropriateness of unit. Because, remember- Is that the sole basis upon which you rely for your argument of waiver and equitable estoppel? That- Or is there anything else? It's the issue, I think the main issue driving the waiver and estoppel is the union's disclaimer of interest in representing the Cremation Society employees in 2007. Based upon that, we're saying they can't come back now and reclaim who they disclaimed multiple years ago. And you were giving us the history. So I wonder, is there any record evidence support for the assertion that there were no meaningful changes in Cremation Society and Sullivan Olson's organizational or operational structures from 2007 to 2013? I think there is deposition testimony from Gerald Sullivan and from Vicki Grantham that both talk about the ongoing and really not significantly changing nature of the way they did business during that time period. So, yes, I do believe there's some record testimony on that. Beginning to this point of the effect of this 2007 decision, the union needs the Cremation Society employees in order to avoid the one-man unit role, right? Because no one disputes that starting in January of 2013, Sullivan Olson was diminished to one employee, Douglas Klein. And all the way through 2013, that remained the case. And Sullivan Olson, at the end of November 2013, notified the union that we're repudiating the agreement under the one-man unit role. We haven't employed anyone else. We have no intent to employ anyone else. And it's been that way for approximately a year. The union, after a month or so, later on raised the argument that while we think you're the same or a single employer with Cremation Society, and we get to count those employees as part of the bargaining unit so we can avoid application of the one-man unit role and thus avoid repudiation of the agreement and thus enforce the arbitration rights we have under that agreement, mainly impacting Mr. Klein and the termination of him. The problem, though, as I see it, Your Honors, is that we have a very unique circumstance in this case, and that is that the union previously represented the employees at Cremation Society and expressly and unequivocally disclaimed an interest from representing those employees. It walked away from them. It assessed and collected withdrawal liability for them. So our point of view on this is they can't now come back and say the very employees that we say we no longer represent, we have no interest in representing, we now are counting those employees to form a new bargaining unit in order to avoid application of the one-man unit role. It seems like the district court judge dispensed with that argument pretty quickly and found that that evidence wasn't sufficient to demonstrate an explicit waiver on the part of the union. I think the way the district court viewed it, I don't know that they got quite into it in that way. When I read the district court opinion, the district court seemed to stop the analysis at, I believe that the district court believed there was a single employer, therefore the issue is over. It's decided. What I'm suggesting to Your Honors is that the inquiry shouldn't end there because you have the secondary question of the appropriateness of the unit as well, and I think it also overlaps with whether this is really a single employer. Again, to have or to avoid application of the one-man unit rule, the union needs to count the cremation society employees as part of the bargaining unit, but they've already disclaimed those employees. That's where we think the mistake was made by the district court in not looking at that action in 2007 and viewing that as, what do you call it, grabbing those employees and including them in a, I don't mean to be terse with this, but including them literally in a body count to avoid the one-man unit rule was inappropriate. They've already represented them and they walked away from them. They can't now re-grab them because those employees haven't shown a majority interest in the union. There's been no election with those employees at cremation society. The union walked away from there. I would suggest that even if the district court was correct in determining under its analysis that there's a single employer here, that that doesn't end the inquiry, that the union's termination of representing the CSI employees precludes it from counting those employees to avoid the one-man unit rule, and they were still left with one man, Douglas Klein. In fact, the record evidence actually suggests, or says, not suggests, says that Mr. Klein ultimately was even no longer an employee of Sullivan Olson. He ultimately ended his career as an employee at cremation society, not Sullivan Olson. So we would suggest that there's really no employees left in Sullivan Olson at the end of this time. So I just invite the court to take a closer look at that 2007 disclaimer of interest by the union and the effect that has on the union's ability to reclaim those employees subsequently in an effort to avoid the one-man unit rule. Assuming for the sake of argument that we don't agree that they waived and should be equitably stopped from making that argument, do you have any issue with the manner in which the district court judge determined that these three funeral directors were part of the bargaining unit? We do. We do, and that gets back to the same issue, number one, that we think you can't grab these same employees who were disclaimed and put them back into the bargaining unit as a matter of judicial intervention. Again, there has to be either a voluntary recognition on the part of the employer that those employees are part of the unit. But I'm talking about the process by which the district court judge made that determination, that he concluded that they were part of the bargaining unit that was the subject of the CBA. We do think that the record and the analysis by the district court was a little thin in that regard in terms of looking at the actual duties and responsibilities of these various employees. Well, what is there in the record? What record evidence do we have that the other three employees were not performing bargaining unit work? I think the record evidence on those employees really was focusing on the differences between performing cremation work, which is what cremation society did predominantly, versus traditional funeral work, which is what these other folks were doing. And there was some record evidence where the folks from cremation society did not say they exclusively do cremation and the other group exclusively does traditional burials. But the record evidence was clear that cremation society predominantly, overwhelmingly does cremation work, while the other group overwhelmingly does traditional funeral work, and they didn't overlap. And, in fact, they had instructions and directions to not overlap with each other's business in that regard. So there is some evidence to show that. And I don't think that there is a legal standard that requires an absolute 100 percent separation between the two. It's a group of factors that the court needs to look at to make that determination. And beyond that determination, the other issue that we've raised is some of the factors we think the district court overlooked or made mistakes on in concluding that there was a single employer, especially because this case comes to us in the context of a motion for summary judgment. And the court, of course, is supposed to make all reasonable inferences in favor of the non-movement rather than against the non-movement. And we would submit that in this case there were multiple inferences drawn against cremation society in order for the court to arrive at its ultimate conclusion. So some of those facts that we think the court made a mistake on and overlooked are that cremation society and Sullivan Olson were invoicing and paying each other for services that were provided to each other. In fact, the union, in its response brief on summary judgment, this is at the supplemental appendix at page 111, conceded that point. It acknowledged that that occurred. You know you're under rebuttal time, Mark. Yes, I'll just finish up real quick and save a couple minutes then. Thank you. But the court nonetheless went out of its way to find a contrary fact on that, despite defendants' concession of that point. The other dealt with the court's devaluation of Ms. Graham's testimony about that issue of invoicing and paying for services, as well as Mr. Sullivan's testimony about who actually ran the day-to-day operations of the two different companies. And both of these issues were found at page 13 and 15 of the district court's order, and both done in footnotes where the district court is, again, going out of its way to make inferences against a company on those issues. Yes, and I will preserve my time for a moment. All right. Thank you. Mr. Huffman-Goshling? Yes. Did I say that correctly? You did. All right. Good morning. May it please the Court, my name is David Huffman-Goshling. I represent Teamsters Local 727. This case, Your Honor, is really about whether Sullivan Olson had a right not to arbitrate the discharge grievance of Doug Klein, and whether it was bound by the decision of the Joint Grievance Arbitration Board that, as a matter of contract, Sullivan Olson had not sufficiently terminated the collective bargaining agreement. The justification, as counsel pointed out, for its refusal to arbitrate those cases, is that the bargaining unit had dwindled to a single employee. What the district court properly found was that that was not the case because a second employer, Cremation Society of Illinois, formed a single employer along with Sullivan Olson. The various factors under South Prairie and this Court's precedence were all present and sufficient to find a single employer status. At the same time, the evidence showed, unequivocally I would say, that Cremation Society employees at the time of their repudiation were, in fact, doing work covered under the collective bargaining agreement between Sullivan Olson and Teamsters Local 727. For that reason, the single employer finding was supported by the record. Weren't there enough facts under the Fabia, is it Fabia, Fabia four-part test, to at least create a genuine dispute that should have gone to the trier of fact? Counsel alluded to some of them, but weren't there enough factors evident to at least create a genuine dispute of fact about whether or not they were a single employer, again, such that it should have gone to the trier of fact as opposed to been disposed of on summary judgment? I think the issue is that the facts in which there is, the facts which I would say that the counsel was referring to. There were different services. There were some different ownership. There were different financial operations and controls between the two companies. I mean, wouldn't that alone have created a genuine dispute? I don't think there's a dispute as to the facts in the sense that the most important factor that the courts analyze is common control over labor relations. And counsel didn't mention those factors, and I think they overwhelmingly favor the union's position, which is that operationally prior to their literally becoming a single employer by merging, operationally, these two entities at the Olsen-Burke-Sullivan Funeral Home were acting as a single employer. And so each company provided services to the other company's clients, right? They used or they shared computers, punched the same time clock, same administrative staff. Same manager directly there. Payroll and HR were the same. Same HR person who provided HR services to Sullivan-Olsen at no cost to that company. When the merger happened, was there any difference? No. It was Gerald Sullivan's testimony that there was no change from the employee's perspective or even from the perspective of a customer. There was no change in operations in the company once the merger took place. And what about this, the services provided by the two, as counsel's arguing the difference, cremation, primarily cremations, and the other not, and that they were not supposed to cross over into each other's territory, so to speak. Well, the testimony, I don't think, was that he used the words predominantly and overwhelmingly. I believe Ms. Grantham, the controller's testimony was mostly. Anyway, the cremation society mostly did cremations. Sullivan-Olsen-Burke-Sullivan mostly did traditional funerals. Remember that the only real testimony on who did what for these two technically separate entities was that of Mr. Klein, who had worked there for 16 years and presumably knew what he was talking about as to what employees did what. And his testimony was unequivocal that there were Olsen-Burke-Sullivan employees doing the work that the contract describes as bargaining in at work, removals of remains from the place of death, transport of remains, embalming, funeral directing. That's the work that the contract describes as bargaining in at work. And his testimony and his declaration on summary judgment, which is not contradicted by any other testimony from any other current employee of the company, was that cremation society employees were doing that work at the Olsen-Burke-Sullivan funeral home. So was it accepted by the parties at summary judgment that those folks were within the bargaining unit established under the CBA, or was that disputed? I think there are two related questions, I think. One is whether the combined employees of the two entities constitute an appropriate unit for collective bargaining under the National Labor Relations Act. And the other is whether the employees of Olsen-Burke-Sullivan working at the funeral home were doing work that was covered under the existing collective bargaining agreement. All of the employer's arguments were focused on that second question. There was never any dispute, never any position taken before the district court or before this court in the employer's briefing that the combined employees of the two entities do not form an appropriate unit for collective bargaining. Does the district court judge have authority to make that decision, or is that exclusive to the NLRB? This court has never taken a position on that question, and other circuits are split on it. I think the answer in this case is that this case is more akin to some of this court's ERISA cases where this single employer issue comes up and the question is whether to apply the contract's contribution requirements to an employer that's not signatory. And actually one involving the funds affiliated with this local Moriarty B. Speck. In that case, the court determined that it didn't have to reach the question because the only real question was whether the employer was bound by the contribution obligations in the contract. It didn't address representational issues. And this case is similar. The contract issue in this case is whether Sullivan Olson had a duty to arbitrate, whether it was bound by an arbitration decision, and the case does not raise representational questions. The case does not raise the question of does cremation society have a duty under Section 9A of the National Labor Relations Act to bargain with the union as its employee's representative. It doesn't raise the question of what does an appropriate unit look like of the combined entities. It only raises the narrower question of what is the contractual obligation of cremation society. And so I think the case is akin to the ERISA cases and so that the representational issue doesn't really arise. The court doesn't have to decide it to decide the merits of this case. And, again, I also think that the employer has waived the issue because it hasn't objected to or it hasn't contended in this case that the two combined entities do not form an appropriate unit for collective bargaining. And that's similar to the Lippert-Tile case that both parties cited in the briefs, where the court briefly raised the question and said, well, the employer actually has not raised this question below in arbitration and so it's waived the issue. On the waiver and estoppel issue, the first council has not returned to the district court's finding, which was that it had not properly raised the waiver and estoppel issue before the district court by not citing any federal common law authority in support of it, that by referring only to Illinois state law in its briefings, that was not sufficient even to flesh out the issue for the district court, so it was under no obligation to essentially do the plaintiff's research for it and come up with a theory on its own. So by so poorly supporting the argument that it had waived the argument. Even if that's true, do they not have the right to challenge the finding and reasoning of the district court judge's holding in that respect? Again, the district court's primary holding was that the issue had been waived and then it kind of offered some alternative analysis, which yes, they have a right certainly to respond to. So you think the district court judge's raising of federal common law was kind of an alternative holding in that respect? Yes. The contention today is that the union's disclaimer of interest in 2007 is somehow effective for all time and bars the union from making any representational contentions with respect to cremation society in the future. At the time of 2007, the record shows that there were two bargaining units. There was a multi-location unit, cremation society, I think 10 locations around the Chicagoland, and there was a separate unit with a separate collective bargaining agreement at Sullivan also. The union disclaimed representation in that larger bargaining unit. There's no question the union is not asserting in this case that it's somehow trying to reclaim the entire 10-location unit. It's simply trying to say that cremation society is bound by the agreement with respect to the employees working at Olsenburg Sullivan Funeral Home by virtue of the integration of their operations there. As the district court pointed out, there was no conduct by the union that ever communicated to Sullivan Olsen during the seven intervening years that it never intended to raise the single employer issue as a defense should Sullivan Olsen try to walk away from its obligations under the collective bargaining agreement. The union's communication of waiver has to be clear, has to be unmistakable. The union's conduct has to be inconsistent with any other interpretation other than that it never intended to raise the single employer theory again. Under collective bargaining agreement, frankly, it's different than the cases relied upon by the employer in which a party accepts the other contracting party's performance, whether it's provision of services or widgets or whatever, accepts the delivery, has no complaint, pays the bill, and then later tries to claim that there's something deficient about the performance. In that circumstance, one can't interpret the party's conduct as consistent with anything other than acceptance of the performance. In the collective bargaining context, you have an agreement under which what the employer is delivering, if you will, is certain terms and conditions of employment that apply to the represented employees. A union may decide not to pursue a particular violation of a contract. You may not know about particular violations of a contract if an employee doesn't bring them to the union. The union may be faced with the decision about whether to file a grievance and have any number of reasons not to file one. And the union has broad discretion under the National Labor Relations Act, its duty of fair representation, to decide what grievances it will and won't pursue. So the point is that a union's failure to complain about a particular contract violation during the life of the contract is not indicative by itself of an intent to walk away from the contract entirely. Something stronger is needed. There has to be a clear disclaimer, a clear indication that it won't raise these issues again. That was not present in this case. So we would ask that the district court's ruling be referred. All right. Thank you. Mr. Hayden, how much? Three minutes. Thank you. With regard to appropriateness of the unit, just to point out that Cremation Society did contest that issue and raise that issue, and it's addressed in its opening brief starting at page 22 in terms of the district court's determination. Well, one thing that is not in dispute is the various services that were provided to each other's clients in that laundry list I ticked off for counsel. You agree that's all? I agree. Okay. I agree. And with regard to appropriateness of units, the courts say that one of the factors that needs to be considered, and this is a really important one in this case, is the labor relations history. And here you have a really divided history between these two entities. They became members and subject to the collective bargaining agreement at different times, Cremation Society in, I believe, 1993 and Sullivan-Olson in 2003. In 2007, Cremation Society, or the union rather, terminated its representation of the Cremation Society employees while it continued to represent the Sullivan-Olson employees up to the point where Sullivan-Olson repudiated when it dwindled to one employee. Did you challenge appropriateness of the unit before the district judge? Yes. That was addressed with the district judge. And Sullivan-Olson, while Cremation Society was no longer represented by the union for seven years, six, seven years to the point where this litigation started, Cremation Society wasn't. Sullivan-Olson was. So there is a very divergent bargaining and labor relations history between these two entities and parties leading up to this litigation. And beyond that, once the union stopped representing the employees at Cremation Society, that resulted in over time different compensation structures, different benefits for those employees, than those at Sullivan-Olson who, even if we assume they were performing the same or similar work, they're now getting paid differently and receiving different benefits for that work. So that was disputed, and we think that's an important factor to look at. I'm sorry. So did you suggest that the district court judge did not have the authority to determine the appropriateness of the unit? No. Like counsel, I think it's a split issue in the circuits, but we did not suggest to the district court that it was beyond its ability to look at that, just that it made a mistake in its ultimate conclusion. That the three funeral directors were a part of that bargaining. Correct. Okay. And ultimately that brings us back to my overarching point, I guess, is that because we have this very unique circumstance here of the union at one time representing the Cremation Society employees, and in 2007, unequivocally, as counsel noted, and I agree with the standard for waiver, unequivocally and unmistakably withdrawing its representation of those employees, it should be bound by that decision. Thank you. Thank you, Mr. Hayden. Thank you, counsel, for your fine arguments and briefs. We'll take the case under advisement.